## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CC-00009-SCT

*MISSISSIPPI REAL ESTATE APPRAISER*
*LICENSING AND CERTIFICATION BOARD*

*v.*

*WEVLYN INETTA JAMES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/96 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ONETTA S. WHITLEY |
| | STEVE LAWRENCE |
| ATTORNEY FOR APPELLEE: | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 01/14/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/8/99 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case comes before this Court on appeal from the Circuit Court of Wilkinson County, Mississippi, Judge Lillie Blackmon Sanders presiding. The Circuit Court was sitting as a court of appellate review regarding an administrative hearing held before the Mississippi Real Estate Appraiser Licensing and Certification Board (hereinafter "the Board"). The Board alleged that Ms. Wevlyn Inetta James' (hereinafter "James"), passing score on the July 10, 1995, certified General Real Estate Appraisal Examination was procured dishonestly. As a result, the Board entered a Board Order on February 15, 1996, declaring the exam null and void and denied James a Certified General License to practice real estate appraising in the State of Mississippi.

¶2. In response to the Board's Order, James filed a Notice of Appeal, Application for Review and Complaint for Other Relief with the Circuit Court of Wilkinson County on February 28, 1996. Briefs were filed and oral arguments were presented to the court on June 17, 1996. On October 16, 1996, the Circuit

Court entered an order and ruling which reversed the Board's decision and issued an Order of Mandamus directing the Board to award the Certified General real estate appraiser license to James.

¶3. On November 14, 1996, the Board filed a Notice of Appeal to challenge the Circuit Court's ruling. Thereafter, the Board sought to stay that Order on December 6, 1996. The court below denied the Board's request for a stay on January 9, 1997 and a formal order reflecting the denial was entered on January 30, 1997. The Board likewise applied for a stay from this Court on January 10, 1997, but this application for a stay was also denied on March 18, 1997. Aggrieved by the proceedings below, the Board now appeals the October 16, 1996, Order and ruling of the Circuit Court raising the following issues:

> **I. THE FINDING THAT JAMES WAS DENIED DUE PROCESS OF LAW BASED ON INSUFFICIENCY OF NOTICE IS ERROR.**
>
> **II. THE FINDING THAT JAMES WAS DENIED A FAIR AND IMPARTIAL TRIBUNAL WAS ERRONEOUS AND CONTRARY TO WELL ESTABLISHED PRINCIPLES OF ADMINISTRATIVE LAW.**
>
> **III. THE INVESTIGATIVE FILE COMPILED BY THE AGENCY STAFF WAS A PART OF THE RECORD OF THE PROCEEDINGS, OR THE PROCEDURAL FAILURE TO INCLUDE SAME AS A PART OF THE RECORD WAS NOT A SUFFICIENT BASIS TO OVERTURN THE BOARD'S DECISION.**
>
> **IV. AN ORDER OF MANDAMUS WAS NOT THE APPROPRIATE REMEDY IN THIS CAUSE AND THE CIRCUIT COURT EXCEEDED THE SCOPE OF ITS AUTHORITY IN ISSUING SAME.**

¶4. The Board conducted a lawful investigation and hearing which determined that Wevlyn Inetta James should be denied an appraisal license because she had cheated on the examination. On review, we find that Judge Sanders erroneously reviewed the administrative decision and substituted her own judgment for that of the Board. Therefore, the Circuit Court's decision is reversed and the refusal of James' license by the Board is affirmed.

## STATEMENT OF FACTS

¶5. This matter originated when Elizabeth Cox (hereinafter "Cox"), a member of the Board's staff, was grading the July 10, 1995 real estate appraisal examination. Cox noticed that James' answer sheet and the answer sheet of one of James' friends, who sat next to her during the examination, were practically identical. Cox brought this matter to the attention of her supervisor, James Alfred "Al" Waits (hereinafter "Waits"). Waits further examined the sheets and determined that the two answer sheets were identical save for one question.

¶6. Waits testified that both James and her counterpart missed 21 out of 125 questions. Out of the 21 questions, 20 of those were the same question with the identical missed answer marked. Also, several of the same questions had been answered incorrectly and then erased and replaced with the correct response. Further, the examinees were issued scratch paper to use for mathematical calculations. All of the examinees' scratch papers, except James', were fully used with scratch marks and calculations all over them. However, James' scratch paper only had one listing of numbers on the entire page.

¶7. Cox and Waits then sought guidance from one of the members of the Board, Mr. Newell W. "Chris" Brigham, III (hereinafter "Brigham"). After looking at the examination and interviewing James and the other applicant in question, a decision was made to present the matter to the Board.

¶8. An administrative hearing was scheduled before the Board for November 16, in order to present the Board with evidence surrounding James' examination. James and her attorney were both notified of the scheduled hearing by letter, dated October 25, 1995. This letter advised them of the date and time of the hearing, the nature and purpose of the hearing and the rights to which James would be entitled, including the right to present evidence, to call and cross-examine witnesses and to be represented by counsel. The letter was mailed to the address provided by James to the Board when she took her examination.

¶9. On November 16, 1995, James failed to appear at the scheduled hearing and upon conclusion, thereof, the Board declined to issue James a Certified Real Estate Appraisal License. The Board entered an order on February 15, 1996, finding that James' score on the July 10, 1995 appraisal examination was null and void as it was procured dishonestly.

¶10. On February 28, 1996, in response to the Board's order, James filed an appeal with the Circuit Court of Wilkinson County. James claimed that she had not been properly notified of the hearing and was therefore denied due process of the law. James also alleged that Brigham's participation in her investigation was improper as he was a member of the Board. James finally asserted that her passing grade on the examination was properly obtained and thereby qualified her to receive her appraisal license.

¶11. After receiving briefs and listening to oral arguments from both parties, the Circuit Court found for James and entered an Order of Mandamus directing the Board to issue a real estate appraisal license to James. After unsuccessfully seeking a stay to the Order of Mandamus, the Board now appeals the Circuit Court's decision to this Court.

## DISCUSSION OF THE ISSUES

### Statutory Authority of the Board

¶12. The statutory authority for the Mississippi Real Estate Appraiser Licensing and Certification Board is found in Miss. Code Ann. § 73-34-1, *et seq.*, also known as the Real Estate Appraiser Licensing and Certification Act (hereinafter "the Act").

¶13. The Board, which is an adjunct board to the Mississippi Real Estate Commission (hereinafter "Commission"), consists of five (5) voting members and an ex-officio, non-voting member, who is the administrator of the Commission. Miss. Code. Ann. § 73-34-7 (1995). The Board's duties include the power to approve or disapprove applications for appraisal licenses. The Board may, upon compliance with the provisions of this chapter relating to administrative hearings, deny a license to an applicant on any of the grounds provided in the chapter. Miss. Code Ann. § 73-34-29 (1995).

¶14. Specifically, the Act provides in relevant part that

An application for licensure or renewal may be denied . . . for any of the following acts or omissions:

. . . .

(b)Procuring or attempting to procure licensure pursuant to this chapter by knowingly making a false statement, submitting false information or making a material misrepresentation in an application filed with the commission or procuring or attempting to procure licensure through any form of fraud or misrepresentation. . . .

Miss. Code Ann. § 73-34-35 (1995).

## I. THE FINDING THAT JAMES WAS DENIED DUE PROCESS OF LAW BASED ON INSUFFICIENCY OF NOTICE IS ERROR.

¶15. The Board first asserts that James was lawfully notified of the administrative hearing. The Court held that the notice sent by the Board was statutorily deficient and deprived James of due process.

¶16. The Act specifically states that

If an investigation indicates . . . a violation under Section 73-34-35, **a formal complaint shall be prepared** by the commission staff at the direction of the board and **served upon such real estate appraiser**. This complaint shall require the accused party to file an answer to the complaint within twenty (20) days of the date of service. . . .

Miss. Code Ann. § 73-34-41 (1995) (emphasis added).

¶17. James asserts that the Board's letter was deficient in that it was not a "formal" complaint and was not properly served on James. We disagree.

¶18. The Act above provides the procedural framework for drafting and issuing a complaint. The Act does not expressly dictate the requirements of a formal complaint. However, in the present case James and her attorney received a letter that advised them of the date and time of the hearing, the nature and purpose of the hearing and the rights to which she would be entitled including the right to present evidence, to call and cross-examine witnesses and to be represented by counsel. We find that this letter was sufficiently "formal" in that it clearly indicated to James, the nature of the Board's complaint.

¶19. Further, the lower court concurred with James when it held that "no process was served" on James. This language from the court below clearly indicates a presumption that notice of administrative hearings is subject to the Mississippi Rules of Civil Procedure.

¶20. However, in *State Oil & Gas Board v. McGowan*, 542 So. 2d 244, 247 (Miss. 1989), we held that

There appears to be no authority for transplanting the Mississippi Rules of Civil Procedure into administrative proceedings. The scope of the rules, found in Rule 1, M.R.C.P., govern procedures in the circuit courts, chancery courts, and county courts in all suits of a civil nature. Administrative hearings are not included within their purview as the State Oil & Gas Board is not a circuit, chancery or county court.

The Board properly mailed the aforementioned letter to James at her official address which she provided the Board when applying for her appraisal license. Additionally, the Board sent a letter to James' attorney alerting him of the administrative hearing.

¶21. Thus, the Circuit Judge incorrectly held that the form and method of notice provided to James was insufficient. While the Act does not prescribe a particular form for a complaint nor a certain mode for service, it is clear that the Board fulfilled its obligation to notify James of the hearing and that she was well aware of the same.

### II. THE FINDING THAT JAMES WAS DENIED A FAIR AND IMPARTIAL TRIBUNAL WAS ERRONEOUS AND CONTRARY TO WELL ESTABLISHED PRINCIPLES OF ADMINISTRATIVE LAW.

¶22. The Board next asserts that the Circuit Court was wrong when it found that Brigham unlawfully participated in James' administrative hearing. The Court held that after Brigham, a member of the Board, participated in James' investigation, he was improperly consulted during the administrative hearing which prejudiced James.

¶23. Regarding the participation of Board members in investigations, the Act states that:

> Upon receipt of information indicating that a licensed appraiser or licensed certified real estate appraiser may have committed a violation under Section 73-34-35, the commission, at the direction of the board, may cause one or more of the investigators on its staff to make an investigation of the facts to determine whether or not there is evidence of any such violation. If technical assistance is required, a staff investigator may consult with not more than two (2) of the voting members of the board. **If a voting member of the board is consulted and renders assistance in an investigation, such member shall be excused from service on the board in connection with any administrative hearing that results from such investigation.**

Miss. Code Ann. § 73-34-41 (1995) (emphasis added).

¶24. On appeal before the Circuit Court, James told the judge that the Board was invited to talk with Brigham about the results of his investigation. In support of this position, James points to a quote from Al Waits who said, "[a]s you are all aware, one of the board members was designated to participate in this review with us. If you wanted to talk with him or for a recommendation that may be a different thing." James claims that this statement by Waits was a suggestion that the remaining Board members could talk with Brigham "for a recommendation," in contravention of the statutory proscription of such action.

¶25. However, James clearly takes this statement out of context. Instead of encouraging the other Board members to consult Brigham, Waits warned them that asking Brigham for advice concerning James would be a "different thing" - a forbidden thing. There is nothing to reflect that the Board had any contact with Brigham regarding James' case. On the contrary, Brigham was expressly shielded from the hearing and did not participate.

¶26. The Board followed the proper statutory procedure by excusing Brigham from the administrative hearing. The integrity of the administrative hearing was not compromised and did not subject James to any manner of prejudice. Thus, the Circuit Judge was erroneous when she found that James received an impartial trial.

### III. THE INVESTIGATIVE FILE COMPILED BY THE AGENCY STAFF WAS A PART OF THE RECORD OF THE PROCEEDINGS.

¶27. The Board next contends that the Circuit Court was in error when it held that the investigative file compiled by Board's staff was made available to the Board for its review, but was not made a part of the record of the proceedings before the Board. The lower court found that this prejudiced James by preventing her from responding to the information contained in the file.

¶28. In support of her argument, James relied on *Love v. Mississippi State Board of Veterinary Examiners*, 230 Miss. 222, 92 So. 2d 463 (1957). In *Love*, an applicant was denied a veterinary license by the Board of Veterinary Examiners and appealed this decision to the Chancery Court. Love objected when the Board of Veterinary Examiners sought to introduce the investigative report and a series of affidavits and letters which tended to show that Love did not meet the requirements for licensure. The chancellor sustained Love's objection.

¶29. We upheld the lower court's action, holding that Love was entitled to have the contents of the investigative file brought to his attention and given an opportunity to see and meet the contents thereof. *Love*, 230 Miss. at 229, 92 So. 2d 463. This Court stated in *Love* that

> [a]dministrative agencies are, as a general rule, unrestricted by the technical or formal rules of procedure which govern trials before a court. However, in the exercise of judicial or quasi-judicial powers, the elementary and fundamental principles of a judicial inquiry should be observed.

*Love*, 230 Miss. at 230, 92 So. 2d at 466.

¶30. The present case is distinguishable from *Love*. Unlike Love, James was given the opportunity to review the investigative file in an open hearing. Had James opted to attend the hearing, she would have had ample opportunity to see and meet its contents. Additionally, the fundamental elements of judicial fairness were maintained. The absence of a physical attachment of the subject documents to the hearing transcript does not exclude them from being a part of the record in this case as administrative hearings are not bound by the formal rules of court.

¶31. Therefore, the Circuit Judge incorrectly found that the investigative file was not a part the record.

### IV. AN ORDER OF MANDAMUS WAS NOT THE APPROPRIATE REMEDY IN THIS CAUSE AND THE CIRCUIT COURT EXCEEDED THE SCOPE OF ITS AUTHORITY IN ISSUING SAME.

¶32. The Board finally takes exception with the Order of Mandamus rendered by the Circuit Judge directing the Board to issue an appraisal license to James.

¶33. In reviewing the decisions of administrative agencies, the lower court must uphold the agency's decision unless it finds as follows:

> The reviewing court will entertain the appeal to determine whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.

*Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993). This Court continues to follow the rule that the scope of appellate review is limited to

the administrative record and the findings of the agency. ***Board of Law Enforcement Officers Standards & Training v. Butler***, 672 So. 2d 1196, 1199 (Miss. 1996). We have made it clear that the courts may not substitute their own judgment for that of an agency. ***United Cement Co. v. Safe Air for Env't, Inc.***, 558 So. 2d 840, 842 (Miss. 1990).

¶34. In the case *sub judice*, Judge Sanders exceeded the applicable scope of review when she directed the Board to issue a license to James.

¶35. First, there is ample evidence to suggest that the Board properly refused to issue a license to James for cheating on her appraisal exam. James and her counterpart, who were sitting immediately beside one another and taking identical exams, each missed 21 questions. Out of those 21 questions, 20 were the same question with the identical wrong answer chosen. Also, all of the examinees were issued scratch paper in order to do mathematical calculations as a part of the exam. All of the examinees, except James, used a substantial portion of the page to work their problems. However, James' page was blank, save one (1) series of numbers that displayed no semblance of calculation. Further, several of the correct answers contained on James' answer sheet had been previously incorrect, but erased and changed to reflect the right selection. These erasures and changes, coincidentally, matched those on the paper of James' friend beside her.

¶36. Second, the Board did not act arbitrarily and capriciously, nor did it exceed its statutory authority. The Board properly followed the procedure which was mandated by the Legislature in the Act. The Board was acting well within its discretion when it denied a license to James.

¶37. Third, and finally, the Board did not violate James' constitutional rights. As discussed above, James was afforded the due process of the law and received a fair and impartial tribunal. Despite James' choice not to attend the administrative hearing, the Board properly notified her of the pending matter and informed her of the rights she possessed in that regard.

¶38. Thus, the Circuit Judge's issuance of the Order of Mandamus was improper.

## CONCLUSION

¶39. In the face of overwhelming evidence, Judge Sanders disregarded the applicable procedure of administrative review to arrive at an erroneous decision. The Board conducted a lawful investigation and hearing which determined that Wevlyn Inetta James should be denied an appraisal license because she cheated on the examination. Therefore, the Circuit Court's decision is reversed in all respects and the action of the Board affirmed.

¶40. **REVERSED AND RENDERED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**