872 So.2d 43 (2003)
George E. BURLESON, Appellant,
v.
HANCOCK COUNTY SHERIFF'S DEPARTMENT CIVIL SERVICE COMMISSION, Hancock County Sheriff Steve Garber and Former Hancock County Sheriff Ronald Peterson, Appellees.
No. 2002-CC-00411-COA.
Court of Appeals of Mississippi.
November 18, 2003.
Rehearing Denied February 24, 2004.
Certiorari Denied May 6, 2004.
*46 James Bailey Halliday, Gulfport, attorney for appellant.
Albert Lionel Necaise, Gulfport, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. The Hancock County Circuit Court upheld the Hancock County Sheriff's Department's Civil Service Commission's (Commission) decision to uphold George Burleson's termination as a deputy. It is from that decision that Burleson appeals asserting:[1]
1. HE WAS DEMOTED IN VIOLATION OF THE CIVIL SERVICE RULES AND REGULATIONS;
2. HE WAS DENIED DUE PROCESS BY HIS DISCHARGE WITHOUT A PRE-TERMINATION HEARING;
3. HE WAS NOT GIVEN A POSTTERMINATION HEARING WITHIN TWENTY DAYS OF HIS REQUEST;
4. HE WAS SUBJECTED TO DOUBLE JEOPARDY;
5. HE WAS DENIED DUE PROCESS BECAUSE OF THE LENGTH OF TIME FOR THE COMMISSION'S DECISION;
6. THE COMMISSION HELD MEETINGS IN VIOLATION OF ITS RULES AND THE OPEN MEETINGS ACT;
7. THE JUDGMENT OF THE COMMISSION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE;
8. THE JUDGMENT OF THE COMMISSION WAS ARBITRARY AND CAPRICIOUS AND BEYOND THEIR AUTHORITY;
9. THE COMMISSION FAILED TO SET FORTH ANY FINDINGS OF FACTS OR CONCLUSIONS OF LAW.

STATEMENT OF FACTS
¶ 2. Burleson was employed by the Hancock County Sheriff's Department. He *47 was assigned to the investigation department. On October 15, 1999, Sheriff Peterson informed Burleson that Burleson was being transferred to the patrol division. The reason given for the transfer was because Sheriff Peterson had been informed that Burleson was an insurance risk. The risk stemmed from two separate lawsuits filed against the sheriff's department based upon actions of Burleson. The insurance company had threatened not to renew the insurance policy covering the sheriff's department. On November 1, Burleson was transferred to patrol. He filed no objection. Although Burleson never complained of the transfer until his termination, he now argues that this was a demotion and not a transfer.
¶ 3. On March 13, 2000, Burleson received a written statement that he was being terminated from his employment because of the insurance risk he posed. The letter also included his right to appeal and his entitlement to accumulated compensatory and vacation time. The letter was from Sheriff Garber. Sheriff Garber entered office in January of 2000 after defeating Sheriff Peterson in the election. On March 15, 2000, Burleson requested a hearing. Burleson filed a written complaint with the Commission.
¶ 4. On May 2, the Commission acknowledged it was investigating the matter. The Commission conducted an investigation and hearing. On August 24, 2000, Burleson met with the Commission. It was at this time, Burleson discovered that the Commission had already met with the other parties.
¶ 5. In late August of 2000, a hearing was held, but was continued as the attorney that was to represent Sheriff Garber was called as a witness, resulting in Sheriff Garber's having to retain other legal counsel. The hearing was continued several times and was reconvened on January 17, 2001. Burleson asserts that cross-examination of the opposition was not allowed.
¶ 6. The Commission returned a decision on March 26, 2001, approving the termination of Burleson. Burleson appealed to the Hancock County Circuit Court on April 6, 2001. The circuit court judge affirmed the decision on February 22, 2002. Burleson perfected his appeal.

LEGAL ANALYSIS
¶ 7. The standard of review this Court is to follow in appeals from a circuit court's ruling on a case from the Civil Service Commission is set out in section 21-31-23 of the Mississippi Code Annotated. It states in part:
However, such hearing shall be confined to the determination of whether the judgment or order of removal, discharge, demotion, suspension or combination thereof made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds.
Miss.Code Ann. § 21-31-23 (Rev.2000).
¶ 8. The Mississippi Supreme Court has held that "intertwined with this question [of good faith] is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious." City of Meridian v. Hill, 447 So.2d 641, 643 (Miss. 1984). The burden is on the appellant. Ladnier v. City of Biloxi, 749 So.2d 139, 154 (¶ 59) (Miss.1999).

1. WAS HE DEMOTED IN VIOLATION OF THE CIVIL SERVICE RULES AND REGULATIONS?
¶ 9. The Civil Service Rules and Regulations Rule 1.3 states in part:

*48 No person who has been permanently appointed or inducted into civil service under the provisions of this act ... shall be removed, suspended, demoted, or discharged, or any combination thereof, except for cause, and only upon the written accusation of the sheriff or any citizen or taxpayer, a written statement of which accusation, in general terms, shall be served upon the accused and a duplicate filed with the commission.
¶ 10. The rule is based on part of Mississippi Code Annotated section 21-31-23. Burleson did not make his transfer an issue until March 15, 2000, when he requested a hearing regarding his termination and "demotion." The Civil Service Rules and Regulations Rule 1.3 allows for only ten days from date of incident to request a hearing.
¶ 11. Burleson argues that because the Commission did not object to his raising the issue, it was properly before the Commission. The Commission issued no ruling or statement regarding the reassignment. Because Burleson failed to properly raise the issue within the required time, the Commission did not have to consider the issue.
¶ 12. Although the circuit court did decide that the issue was not properly before the Commission, the circuit court also discussed whether Burleson was actually demoted or reassigned. The technical definition of a demotion according to the Civil Service Rules and Regulations Rule 3.2.11 is a reduction to a class having a lower maximum rate of pay. While evidence suggests that a patrol officer does have a lower maximum rate of pay, there is no evidence that Burleson actually received a lower rate of pay.

2. WAS HE DENIED DUE PROCESS BY HIS DISCHARGE WITHOUT A PRE-TERMINATION HEARING?
¶ 13. The Civil Service Rules and Regulations Rule 1.3 states in part:
In the absence of extraordinary circumstances or situations, before any such employee may be removed or discharged, he shall be given written notice of the intended termination, which notice shall state the reasons for termination and inform the employee that he has the right to respond in writing to the reasons given for termination within a reasonable time and respond orally before the sheriff. The sheriff may in his discretion, provide for a pre-termination hearing and examination of witnesses, and if a hearing is to be held, the notice to the employee shall also set the time and place of such hearing.
¶ 14. The sheriff's decision whether or not to grant a pre-termination hearing is discretionary. Burleson argues that federal law requires a pre-termination hearing for civil employees. In Cleveland Board of Education v. Loudermill, the court ruled that public employees must be given a pre-termination hearing. 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Although the court did not require that a full evidentiary hearing be held prior to discharge, it did conclude that some type of informal hearing was called for. Specifically, the court found that a public employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to termination. Loudermill, 470 U.S. at 546, 105 S.Ct. 1487.
¶ 15. The Fourteenth Amendment forbids states from depriving an individual of life, liberty or property without due process. Due process requirements are not the same in every situation. Rather, the amount of process required varies according to the circumstances of the deprivation. In Mathews v. Eldridge, 424 *49 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the three factors normally weighed in determining the required amount of process are the importance of the individual interests involved, the value of specific procedural safeguards to that interest and the government interest in administrative efficiency. Id.
¶ 16. When a procedural due process claim is raised in a case, it must be evaluated using a two step process. Nichols v. City of Jackson, 848 F.Supp. 718, 720 (S.D.Miss.1994). "The first step requires the court to decide whether a protected life, liberty or property interest exists. The second step is a court determination of what process is required in the situation." Id.
¶ 17. The first step of the analysis is easily dealt with. The plaintiff's property interest in his employment was created by Mississippi Code Annotated Sections 21-31-21 and 21-31-23, which provide that civil service employees cannot be discharged except for cause. As for the second step, Burleson was given the minimum due process required by an analysis of the Mathews factors: the written notification of termination and the actions he could take if he disagreed with the termination. We do not have to discuss the extraordinary circumstance or situation exception, as there was no due process violation.

3. HE WAS NOT GIVEN A POSTTERMINATION HEARING WITHIN TWENTY DAYS OF HIS REQUEST.
¶ 18. The Civil Service Rules and Regulations Rule 1.3 states in part:
Where there are extraordinary circumstances or situations which require the immediate discharge or removal of an employee such employee may be terminated without a pre-termination hearing as required by this section, but such employee shall be given written notice of the specific reasons for termination within 24 hours after the termination, and shall be given an opportunity for a hearing similar to the pre-termination hearing provided in this section within 20 days after the date of termination.
¶ 19. Burleson was not informed of any action the Commission was taking until forty-eight days after his written request for a post-termination hearing.
¶ 20. We follow the same analysis here as we did in the pre-termination hearing issue. Burleson was entitled to a certain amount of due process as a civil servant. The question is what was the minimum amount of due process which was required. The three factors, (1) the importance of the individual interests involved, (2) the value of specific procedural safeguards to that interest and (3) the government interest in administrative efficiency, must be weighed. Mathews, 424 U.S. at 335, 96 S.Ct. 893. While it was important to Burleson to have a quick decision by the Commission, it is also important that a proper investigation be conducted by the Commission.
¶ 21. It also does not appear that Burleson pressed the issue for a hearing within twenty days of his termination. We do not find in the record a petition for a writ ordering a hearing within the twenty days of request. As such, we find that Burleson failed to press the issue of having a hearing within twenty days of his request, and even if he had, the Commission is allowed the flexibility to properly investigate the matter.

4. WAS HE SUBJECTED TO DOUBLE JEOPARDY?
¶ 22. Burleson argues that the transfer in November of 1999 was a demotion rather than a transfer. He argues that a demotion is a reduction from one pay class *50 to another pay class with a lower maximum rate of pay.
¶ 23. Burleson argues that his "demotion" was for the same reason as his termination, thus good cause was lacking for the termination. We agree with the principle that a civil servant should not be punished twice for the same incident, but we disagree that this was the case here. Since Burleson failed to press the issue of his "demotion" until he was terminated, we can only assume that he was transferred and not demoted. Since Burleson was working for the sheriff's department, he was subject to a reclassification of his duties.

5. WAS HE DENIED DUE PROCESS BECAUSE OF THE LENGTH OF TIME FOR THE COMMISSION'S DECISION?
¶ 24. Burleson argues that because it took over a year for the Commission to reach a decision, his due process rights were violated. Some of the delays were agreed to by Burleson's attorney. As stated earlier, the Commission is afforded the opportunity to conduct a thorough investigation and make a well-informed decision. We do not think that the delays were a violation of due process.

6. DID THE COMMISSION HOLD MEETINGS IN VIOLATION OF ITS RULES AND THE OPEN MEETINGS ACT?
¶ 25. When Burleson met with the Commission for the first time in August of 2000, he was informed that the Commission had already met with Sheriff Garber, Ronald Cuevas, and Gerald Gex. Burleson was not given notice of the meetings. When Burleson and thee other parties met for the hearing, Burleson was not given an opportunity to cross-examine the opposition.
¶ 26. The Civil Service Rules and Regulations Rule 1.3 states in part:
All investigations made by the commission pursuant to the provisions of this section shall be by public hearing, after which reasonable written notice to the accused of the time and place of such hearing, at which the accused shall be afforded an opportunity of appearing in person and by counsel, and presenting defense.
¶ 27. Burleson also argues that the Commission violated the Open Meetings Act by meeting with the parties separately. The Open Meetings Act declares a policy that public business be performed in an open and public manner. While Burleson argues for the nullity of any action not taken in strict compliance with the Act, the supreme court has required only substantial compliance, not a nullification of the action taken. Shipman v. North Panola Consol. Sch. Dist., 641 So.2d 1106, 1116 (Miss.1994).
¶ 28. The Commission investigated Burleson's termination by first meeting with the parties individually. The Commission also allowed a hearing in which all parties were present and testimony was presented by both sides. While we question the investigative process of the Commission in interviewing the parties separately, we do not think that it is a violation of the Open Meetings Act because of the later hearing.
¶ 29. We are also skeptical of Burleson's claim of not being allowed to cross-examine witnesses. The other side also was denied the opportunity to cross-examine witnesses. But the saving point of the hearing is that both sides could put on rebuttal witnesses. There is also no mention of whether Burleson could have secured the other side's witnesses as adverse witnesses. There was also no record of *51 Burleson seeking a writ allowing him to cross-examine witnesses.

7. WAS THE JUDGMENT OF THE COMMISSION NOT SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 30. Burleson argues that the Commission lacked substantial evidence to uphold his termination. Civil Service Rules and Regulation 15.1.1 provides in part that a civil servant may be removed for any "omission or commission tending to injure the public services." Although Burleson claims that he was not a named defendant in one of the two lawsuits against the sheriff's department, testimony showed that he was the reason the sheriff's department was sued. The sheriff's department was advised that the suits could lead to a loss of insurance or an increased premium and deductible.
¶ 31. The decision of a commission must be based on substantial evidence. Board of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). Substantial evidence means evidence which is substantial, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Id. There was substantial evidence presented to the Commission to support its decision. A loss of insurance for the sheriff's department is an injury to public services.

8. WAS THE JUDGMENT OF THE COMMISSION ARBITRARY AND CAPRICIOUS AND BEYOND THEIR AUTHORITY?
¶ 32. As stated above, the Commission had substantial evidence to uphold Burleson's termination. The insurance carrier had threatened to not renew the policy if something was not done about Burleson. Burleson also argues that the decision of the Commission was arbitrary and capricious. The standard is:
[T]he orders of the Commission are final unless (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law. But questions of fact may be involved in the determination of questions of law, so that an order, regular on its face, may be set aside if it appears that (4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power.
Dixie Greyhound Lines v. Miss. Pub. Serv. Comm'n, 190 Miss. 704, 715, 200 So. 579, 580 (1941) quoting I.C.C. v. Union P.R.R. Company, 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308 (1912).
¶ 33. The sheriff acted in the best interest of the sheriff's department and the county. The Commission was correct in upholding the termination.
¶ 34. Burleson also argues that the decision of the Commission is null because the commissioners were serving beyond their appointed terms. The argument was not presented to the Commission. It was presented for the first time to the circuit court on appeal and the circuit court ruled it untimely. Touart v. Johnston, 656 So.2d 318, 321 (Miss.1995). We agree. Although Burleson is precluded from raising this issue on appeal, public officials can serve after the expiration of their term until they are replaced. Andrews v. State, 69 Miss. 740, 746, 13 So. 853, 854 (1892).

*52 9. DID THE COMMISSION FAIL TO SET FORTH ANY FINDINGS OF FACTS OR CONCLUSIONS OF LAW?
¶ 35. Burleson also argues that the Commission's order failed to set forth any findings of fact or conclusions of law. The order stated only that Burleson was terminated for "good cause" and not for any political or religious reasons. We entered an order mandating the Commission to prepare proper findings of fact and conclusions of law.
¶ 36. The Commission complied and entered an amended order that found as fact that Burleson's conduct in his official capacity, more particularly in two incidents that ultimately led to suits being brought against the sheriff's department, constituted inattention to duty and incompetence. The Commission further found as fact that the continued employment of Burleson by the department raised a substantial risk that the department would be unable to renew its existing liability insurance coverage, which would have the potential to substantially hamper the department in the performance of its duties. We conclude that there was substantial evidence in the record to support these findings of fact. We also find that the findings of fact were sufficient, as a matter of law, to constitute grounds for Burleson's discharge. This supplemental order therefore renders Burleson's original contention moot.

CONCLUSION
¶ 37. While the Commission may have made some mistakes, it is important to remember that the Commission is an administrative law agency composed of persons not always well versed in the law. The Commission had to make a hard decision, whether to sacrifice insurance coverage for the sheriff's department thereby putting all citizens of that county at risk or to uphold the termination of Burleson. The Commission may have made some mistakes, but its decision followed a lengthy investigation and information gathering process. The circuit court upheld the Commission's decision. We uphold the circuit court's decision.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
BRIDGES, THOMAS, LEE, AND CHANDLER, JJ., CONCUR. KING, P.J., AND IRVING, J., CONCUR IN RESULT ONLY. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND GRIFFIS, J.
SOUTHWICK, P.J., dissenting.
¶ 39. With respect for the majority, I find that more process was due to Burleson before he was terminated. The Court points out that the United States Supreme Court has held that a public employee, protected in his job by the limitation on dismissal only for good cause, must have a pre-termination opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Though citing that case, the majority then does not apply it.
¶ 40. Once a life, liberty or property interest is identified, then any deprivation of that interest must be through such procedures as are needed to provide fairness in the context of the deprivation. It is certainly true that the process that is constitutionally required depends on various considerations. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The problem, here, though, is that the context has already been addressed by the Supreme Court. The weighing of factors required by Eldridge in the context of for-cause termination from public employment was performed by the Supreme Court. Loudermill, 470 U.S. at 543-45, *53 105 S.Ct. 1487. The conclusion was that a pretermination hearing was needed:
The governmental interest in immediate termination does not outweigh these interests. As we shall explain, affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.
Loudermill, 470 U.S. 532, 544-45, 105 S.Ct. 1487. The Court followed these observations with the conclusion "that the pretermination `hearing,' though necessary, need not be elaborate. We have pointed out that `[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" Id. at 545, 105 S.Ct. 1487.
¶ 41. Since Burleson was not given an opportunity to be heard prior to his termination, I would reverse and remand.
McMILLIN, C.J., AND GRIFFIS, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] We have restructured the issues to facilitate a better understanding of the nature of this appeal. While Burleson asserted twenty issues, many of the issues were repetitive in nature and are capable of being discussed within other issues.