# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-01346-SCT

*THE BOARD OF LAW ENFORCEMENT OFFICERS STANDARDS AND TRAINING*

*v.*

*WILLARD HAROLD BUTLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/92 |
| TRIAL JUDGE: | HON. ANTHONY THOMAS FARESE |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LARRY STROUD |
| ATTORNEY FOR APPELLEE: | JOE THOMAS GAY |
| NATURE OF THE CASE: | CIVIL - STATE AGENCIES AND BOARDS |
| DISPOSITION: | REVERSED AND REMANDED - 4/11/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/2/96 |

**BEFORE SULLIVAN, P.J., PITTMAN AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a December 10, 1992 decision of the Tippah County Chancery Court overruling the Board of Law Enforcement Officers Standards and Training's decision to deny certification to Willard Harold Butler. The Board found Butler ineligible to continue as a law enforcement officer in light of his 1987 conviction for violating 18 U.S.C. § 242, deprivation of rights under color of law, in connection with the blackjack beating of Jake Gibbs, an elderly black prisoner in police custody. After considering the record, as well as testimony by Gibbs and Butler that had not been heard by the Board, the chancellor ruled that the Board's decision was arbitrary and capricious. Because the chancellor exceeded his limited powers of review in going beyond the record available to the Board and in substituting his opinion for that of the agency, we reverse and remand for reinstatement of the Board's decision.

I.

¶2. Willard Harold Butler, a law enforcement officer with thirty-two years experience in Mississippi and Tennessee, served as a Deputy Sheriff of the Tippah County Sheriff's Department. On September 19, 1986, he was indicted by a grand jury of the United States District Court for the Northern District of Mississippi for violation of 18 U.S.C. § 242. The charges stemmed from a February 7, 1986 incident wherein it was alleged that Butler beat Jake Gibbs, a seventy-five year old black man whom he had taken

to the Tippah County Jail for administration of an intoxilyser test after Gibbs was involved in a minor hit-and-run accident. Gibbs sustained two broken ribs as a result of the incident.

¶3. A jury trial was held on March 3, 1987 in the United States District Court for the Northern District of Mississippi. The jury found Butler guilty as charged.[1] He received a one-year prison sentence, to be suspended after spending forty days in "a jail-type or treatment institution," and two years probation and was ordered to pay restitution to Gibbs for his medical bills. Butler filed an appeal with the Fifth Circuit Court of Appeals, but later entered a stipulation for dismissal of appeal, which was granted.

¶4. Butler returned to work for the Tippah County Sheriff's Department in January, 1992. He filed a Request for Certification with the Board of Law Enforcement Officers Standards and Training, an appointed board of the Department of Public Safety. He appeared at the Board's August, 1992 meeting, accompanied by Tippah County Sheriff Paul Gowdy and Investigator Steve Williams. He was not represented by counsel. The Board was presented with copies of the indictment, judgment and commitment order; a transcript of trial testimony by Gibbs, his physician and Tate Paul, a former police officer who was at the jail at the time of the 1986 incident; and a letter from the U.S. Attorney's office. Copies of the prosecution's version of the incident obtained from the U.S. Department of Justice were distributed to the Board members. Jim Walker, Director of the Department of Public Safety, indicated that this version was consistent with the testimony in the transcripts, but noted that the Board had not been provided with a copy of Butler's testimony.

¶5. Butler's certification request was denied "based on the Board's findings that Butler was convicted of a misdemeanor which involved moral turpitude and that his actions breached the established minimum standards, violated the *Law Enforcement Code of Ethics* and would greatly diminished [sic] the public trust in the competence and reliability of a law enforcement officer." He filed his Complaint to Set Aside Denial of Certification in the Tippah County Chancery Court on September 11, 1992. A bench trial was held on December 9, 1992. Over the Board's objections that the chancellor cannot retry an agency decision de novo, both Gibbs and Butler testified regarding Butler's conduct and fitness to act as a Deputy Sheriff. After hearing their testimony, the chancellor ruled:

> It's the judgment of this Court, that the decision of the State Board is arbitrary and capricious. This court, being vested with administrative review and being a court of equity, has the power under certain facts and circumstances to review the record from the administrative agency, **and to add to it such other testimony and proof that could have been available, but was not used for whatever the reason may be.**
>
> In the area of criminal law, sometimes an innocent person is convicted. **While serving time, additional proof and evidence is secured.** They have remedies for post-conviction relief. **It would appear to me that this is a similar situation.** (Emphasis added).

¶6. On December 10, 1992, the chancellor entered a Decree Setting Aside Denial of Certificate, finding that the Board's decision was arbitrary and capricious and further, that the court had the power to add to the record "such other proof and testimony that could be available." Aggrieved, the Board appealed to this Court to determine:

> I. WHETHER A CHANCERY COURT ACTING AS AN APPELLATE COURT IN AN APPEAL FROM AN ADMINISTRATIVE AGENCY IS LIMITED TO THE RECORD BEFORE

THE ADMINISTRATIVE AGENCY

## II. WHETHER A CHANCERY COURT ACTING AS AN APPELLATE COURT MAY NOT SIMPLY SUBSTITUTE ITS OWN JUDGMENT FOR THAT OF THE ADMINISTRATIVE AGENCY

II.

¶7. At issue in this appeal is not whether Butler breached the minimum standards required of law enforcement officers in this State, but, rather, whether the chancery court overstepped its authority and failed to follow established standards of review in reversing the decision of the Board of Law Enforcement Officers Standards and Training to not reinstate Butler's certification. We find that it did.

¶8. The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party. *Sprouse v. Mississippi Employment Security Commission*, 639 So. 2d 901, 902 (Miss. 1994); *Mississippi Commission on Environmental Quality v. Chickasaw County Board of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993); *Melody Manor Convalescent Center v. Mississippi State Department of Health*, 546 So. 2d 972, 974 (Miss. 1989). There is a rebuttable presumption in favor of the agency's decisions; the burden of proving to the contrary is on the challenging party. *Sprouse,* 639 So. 2d at 902; *Chickasaw County*, 621 So. 2d at 1216.

¶9. Appellate review of an agency decision is limited to the record and the agency's findings. *Chickasaw County*, 621 So. 2d at 1216; *Mississippi Employment Security Commission v. PDN, Inc.*, 586 So. 2d 838, 840 (Miss. 1991). The reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case. *Sprouse,* 639 So. 2d at 902; *Chickasaw County,* 621 So. 2d at 1216; *Mississippi Public Service Commission v. Merchants Truck Line, Inc.,* 598 So. 2d 778, 782 (Miss. 1992). Chancery and circuit courts are held to the same standard as this Court when reviewing agency decisions. *Chickasaw County,* 621 So. 2d at 1215. When this Court finds that the lower court has exceeded its authority in overturning an agency decision, we will reverse and reinstate the agency's decision. *Chickasaw County,* 621 So. 2d at 1215; *Merchants Truck Line,* 598 So. 2d at 782.

¶10. Both parties agree that the chancellor's decision was based on three factors highlighted in the court's opinion: that the grand jury of Tippah County refused to indict Butler for the assault of Jake Gibbs, indicating that "[t]he citizens of Tippah County apparently were not offended;" that Jake Gibbs testified before the chancellor that he had forgiven Butler; and that the chancellor was of the opinion that "if professions, such as law and medicine, allow for readmission of those who violate the public confidence and trust in the work that they do, the same should apply to law enforcement officers."

¶11. The Board first contends that the chancellor exceeded his authority in going beyond the record to make his decision by considering Gibbs' testimony and the fact that the Tippah County grand jury had not indicted Butler. In determining that the Board's decision was arbitrary and capricious, the chancellor stated:

> This court, being vested with administrative review and being a court of equity, has the power under certain facts and circumstances **to review the record from the administrative agency, and to add to it such other testimony and proof that could have been available, but was not used for**

**whatever the reason may be.** (Emphasis added).

To that end, he allowed into evidence the testimony of both Butler and Gibbs, presented at the December 9, 1992 bench trial and based his decision, in part, on that testimony. By so doing, the chancellor erred in going beyond the record and the Board's findings.

¶12. Contrary to its brief, the minutes of the Board's August, 1992 meeting reflect that Investigator Steve Williams had advised the Board that the grand jury had not returned an indictment against Butler on assault charges. The record is devoid of any other evidence such as a copy of the "no bill" or the minutes of the grand jury. It cannot be said, however, that the Board did not have knowledge of the grand jury's actions. It would appear, nevertheless, that the chancellor substituted his judgment for that of the Board by choosing to emphasize the local grand jury's refusal to indict Butler on assault charges rather than the jury's guilty verdict against Butler in the federal civil rights action.

¶13. The Board further contends that the chancellor substituted his judgment for that of the Board by interjecting into his decision his personal opinion that since lawyers and doctors could be readmitted to their professions after "violat[ing] the public trust and confidence in the work that they do," law enforcement officers should, too. "It is not the function of the circuit court on appeal from an administrative agency to determine whether the action of the agency is right or wrong, correct or incorrect, wise or unwise, advisable **or best fitted to the situation involved.**"*County Board of Education of Alcorn County v. Parents and Custodian of Students at Rienzi School Attendance Center*, 251 Miss 195, 208, 168 So. 2d 814, 819 (1964)(emphasis added). In this case, the chancellor went beyond the record and the findings of the Board, and further, interjected his own legal philosophy, thus exceeding his authority in reviewing an agency decision.

### III.

¶14. Without offering any reason for his conclusion, the chancellor found that the Board's decision was arbitrary and capricious. The Board maintains that its decision is supported by the fact of Butler's conviction pursuant to 18 U.S.C. § 242 for beating Gibbs with a blackjack while he was in police custody and further, by its determination that violation of another's civil rights under these circumstances is a crime of moral turpitude.

¶15. The burden is on Butler to overcome the presumption of correctness that surrounds the Board's decision. *Sprouse,* 639 So. 2d at 902; *Chickasaw County*, 621 So. 2d at 1216. He has not met that burden. Apparently missing the point of "deprivation of rights under color of law," Butler argues that

> [v]irtually every victim of any crime has had his civil rights violated. If Mr. Butler were charged with a civil rights violation based on trespassing on another's property, would this, within itself, be a breach of moral turpitude? Based on the logic used by the board, any conviction of a civil rights violation would automatically be a breach of moral turpitude. Such a belief ignores the other facts surrounding the case and makes any decision of the board lacking substantial evidence.

He further asserts that the Board had insufficient evidence to support its findings since Gibbs did not testify before it.

¶16. The minutes of the Board reflect that it in establishing standards of moral behavior for officers, it has defined moral turpitude:

It was pointed out that the Board had established qualifications for good moral character as evidenced among other things as not having any convictions, plea of guilty or nolo contendere to a felony or misdemeanor involving moral turpitude. The definition of moral turpitude as adopted by the Board is any conduct or pattern of conduct contrary to justice, honesty, honor, modesty or good morals that would tend to disrupt, diminish or otherwise jeopardize public trust and fidelity in law enforcement.

The Board found that Butler's conviction, which resulted from a jury verdict, for violating Gibbs' civil rights violated its definition of moral turpitude and would tend to disrupt, diminish or jeopardize public trust in law enforcement. Beyond his argument noted above, which fails to take into account the gravity of depriving another of his rights under color of law, Butler, like the chancellor, merely substitutes his opinion for that of the Board by championing the idea that the Tippah County grand jury's failure to indict him on assault charges is a greater consideration than the fact that he was found guilty by a jury of violating federal civil rights laws.

¶17. Butler also criticizes the Board for dwelling on the nature of his conviction and for, in its appeal, emphasizing the details of the incident without having had the benefit of Gibbs' bench trial testimony to consider when making its decision. This argument is without merit. Gibbs' testimony before the chancellor only briefly touched on the facts of the incident; the emphasis was on whether Gibbs had forgiven Butler and thought he should again serve as a Sheriff's deputy. The Board had before it, among other things, transcripts of Gibbs' federal trial testimony, as well as the trial testimony of Gibbs' attending physician and a witness to the beating. It cannot be said, therefore as Butler contends, that "the board made its decision solely on the nature of the crime, rather than on any specific conduct on the part of Mr. Butler, making their decision both arbitrary and without any substantial basis of fact."

IV.

¶18. We find that the chancellor exceeded his limited powers of review by going beyond the record to receive testimony by Butler and Gibbs that was not considered by the Board. The chancellor further erred in substituting his judgment for that of the Board in a) placing greater emphasis on the grand jury's failure to indict Butler on assault charges than on the jury's guilty verdict in Butler's federal civil rights trial and b) basing his decision on his opinion that law enforcement officers, like doctors and lawyers, should be given a second chance after they are convicted of a crime. Finally, insofar as the chancellor found that the Board's decision was arbitrary and capricious without any explanation, Butler has failed to carry his burden of overcoming the presumption of correctness that surrounds an administrative agency' decision. Since our established standards governing trial court review of agency decisions was disregarded in this case, we reverse the chancellor's decision and remand for reinstatement of the agency's decision consistent with this opinion.

**¶19. REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.**

1. The United States Attorney, in a July 21, 1992 letter to Jim Walker, Public Safety Director, stated that

Butler's case "was an aggravated one and unusually severe in modern times," and noted that he was found guilty by an all white jury whose foreman was the father of an Oxford police officer.