752 So.2d 1085 (1999)
BOARD ON LAW ENFORCEMENT OFFICER STANDARDS AND TRAINING, Appellant,
v.
Bobby Ray RUSHING, Appellee.
No. 97-CA-00632-COA.
Court of Appeals of Mississippi.
September 21, 1999.
Rehearing Denied November 16, 1999.
Certiorari Denied February 17, 2000.
*1086 Davis C. Scott, Jr., Jackson, Attorney for Appellant.
James K. Dukes, Hattiesburg, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. The Court is called upon in this case to determine the effect of a post-guiltyplea dismissal of criminal charges under Section 99-15-26 of the Mississippi Code on the former criminal defendant's right to resume duties as a certified law enforcement *1087 officer. The Mississippi Board on Law Enforcement Officer Standards and Training, statutorily charged with administering the State's law enforcement certification program, revoked Bobby Ray Rustling's certificate upon learning that he had entered a guilty plea to an indictment for embezzlement, even though the criminal proceeding had been finally dismissed without a formal adjudication of guilt upon Rushing's successful completion of the conditions imposed upon him under Section 99-15-26 of the Mississippi Code. On appeal, the Chancery Court of Jefferson Davis County overturned the agency's decision as being arbitrary and capricious and ordered reissuance of the certificate. The Board has appealed that ruling to this Court. We reverse the decision of the chancellor, thereby reinstating the cancellation of Rushing's certificate.

I.

Facts
¶ 2. It is undisputed that Rushing was indicted in 1992 for embezzlement by a grand jury in the Circuit Court of Marion County and that, at the time of his indictment, he was a deputy sheriff for Jefferson Davis County. There is also evidence in the record that, at approximately the same time, Rushing was indicted in Jefferson Davis County on three counts of assisting county prisoners to escape from confinement. On the day Rushing's trial was set to begin on the embezzlement charge in Marion County, he entered a plea of guilty. In exchange for that guilty plea, the prosecution announced its agreement to enter a nolle prosequi in the Jefferson Davis County cases and recommended that the trial court withhold formal acceptance of the guilty plea pending Rushing's successful completion of certain requirements imposed by the court. According to the State's recommendation, if Rushing successfully completed the conditions, the cause would be dismissed without a formal adjudication of guilt as permitted by Section 99-15-26 of the Mississippi Code. The trial court accepted the prosecution's recommendation and entered an order imposing certain conditions on Rushing to have two years' duration. It is undisputed that Rushing met all of the requirements of the order, and, after expiration of the two year period, the trial court entered a "Final Order of Nonadjudication and Dismissal" in which it finally dismissed the criminal proceeding.
¶ 3. The transcript of the proceeding where Rushing tendered his plea of guilty to the court indicates that the State's proof would have shown that Rushing, acting in concert with another deputy sheriff, obtained a firearm that was the property of the county and pawned it for $250. Some two months after the rifle was pawned, Rushing redeemed the firearm by repaying the amount advanced by the pawn shop together with all fees due and returned the weapon to the sheriff's department. Despite Rushing's subsequent activities in retrieving and returning the firearm, it was the State's position, not disputed by the defense, that the original act of improperly taking possession of the firearm and pawning it was an act sufficiently adverse to the county's ownership rights in the property to constitute an act of embezzlement.
¶ 4. During the two year period covered by the trial court's order, Rushing did not attempt to work in a law enforcement position; however, upon entry of the order finally dismissing the criminal proceeding, Rushing sought to renew his certification as a law enforcement officer since he had been offered a position as chief deputy for the Jefferson Davis County Sheriff. As a part of the application for recertification, Rushing revealed the previous embezzlement proceeding. The state agency charged with administering the law enforcement officers' certification program, the Board on Law Enforcement Officer Standards and Training, was apparently unaware before that time of the matter. The agency initiated a proceeding to inquire as to whether, instead of recertifying *1088 Rushing, the appropriate action of the agency might be to withdraw the certificate.
¶ 5. As required by the applicable statute, the Board conducted a hearing on the matter. Rushing appeared with counsel and was offered the opportunity to be heard. Rushing's case in favor of continuing his certification consisted primarily of (a) a number of letters from various officials and leaders in the community attesting to Rushing's general good character and his abilities as a law enforcement officer, (b) testimony from the present sheriff of Jefferson Davis County indicating his opinion, largely unexplained, that the embezzlement charge was not well-founded and suggesting that Rushing had merely been the victim of a political dispute, and (c) Rushing's own testimony that he was not, in fact, guilty of embezzlement but had entered a plea because he was out of money to further defend himself and because the on-going proceedings were causing pain to his family. The Board, after permitting Rushing this opportunity to be heard, voted to withdraw his certification as an eligible law enforcement officer.
¶ 6. Rushing appealed that decision to the Chancery Court of Jefferson Davis County. The chancellor concluded that the Board's decision was not supported by substantial evidence because, according to the chancellor's findings, the Board placed undue reliance on the accusations of Rushing's participation in the jail escapes to revoke his certificationcharges that were never substantiated because of the entry of nolle prosequi by the State in those prosecutions. The chancellor further suggested that the Board "ignored the pleas of a State Senator, members of Boards of Supervisors, high school principals, Sheriffs, and a Justice Court Judge who attested to Bobby Ray Rushing's character and ability to carry out the duties of a law enforcement officer ..." and concluded that the "[f]ailure to consider these testimonials render[ed] the Board's decision arbitrary and capricious." Based on those conclusions, the chancellor reversed the decision of the Board. The Board then perfected an appeal of that decision to this Court.

II.

The Scope of Review on Appeal
¶ 7. It is a fundamental proposition of law that, when the legislature places regulatory authority for some aspect of the operation of government in an administrative agency, that agency necessarily has substantial discretion in the manner in which it fulfills its mission. Board of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). Even though, as an ultimate safeguard against abuses of that discretion, the law preserves the right of judicial review of an action of an administrative agency, that right of review is severely limited. Id. A court, sitting as an appellate court reviewing the work of an administrative agency, provides protection from actions by the agency that are arbitrary and capricious, from actions for which there is no substantial supporting evidence in the record, and from actions that exceed the agency's statutory mandate or otherwise violate existing law. See, e.g., Id.; Molden v. Mississippi State Dept. of Health, 730 So.2d 29(¶ 8) (Miss. 1998); Mississippi State Bd. of Public Accountancy v. Gray, 674 So.2d 1251, 1253 (Miss.1996); Sprouse v. Mississippi Employment Sec. Comm'n, 639 So.2d 901, 902 (Miss.1994). Beyond that, the courts are not permitted to intercede in administrative proceedings merely to substitute the views of some court of a proper result for that of the administrative body legislatively charged with the task.
¶ 8. This general law of judicial review of administrative agency action applies specifically to appeals from decisions of the Board on Law Enforcement Officer Standards and Training. Butler, 672 So.2d at 1199. The chancellor, sitting in the capacity of an intermediate appellate court, was bound by these considerations to the same *1089 extent that this Court is now bound. Id. Additionally, because the chancellor was not sitting as the initial fact-finder but as an appellate court, his findings and conclusions are not entitled to the same deference that we would afford to the chancellor sitting as a trial judge. Id. Rather, our review focuses on the record produced at the agency level and our obligation of deference flows to the Board.

III.

Background Discussion on Law Enforcement Officer Certification
¶ 9. Some preliminary discussion regarding the general purposes as well as the mechanics of the law enforcement officer certification program appears in order.
¶ 10. In an effort to bring a higher measure of professionalism to law enforcement, Mississippi has, for a number of years, required any person working in law enforcementno matter what governmental entity serves as the direct employer to be certified under a program administered by the state within one year of that person's entry into law enforcement. See Miss.Code Ann. §§ 45-6-1, 45-6-11(3) (Supp.1998). The general statutory requirements for certification of law enforcement officers are contained in Chapter 6 of Title 45 of the Mississippi Code. Miss.Code Ann. §§ 45-6-1 to 45-6-19 (Rev.1993 & Supp.1998). This statutory scheme delegates the actual administration of the certification program to the Board on Law Enforcement Officer Standards and Training, an eleven member board, five appointed by the Governor, two being ex-officio seats, and four being either ex-officio members or the indicated officer's designee. Miss.Code Ann. 45-6-5, 45-6-7 (Rev. 1993 & Supp.1998). In describing the Board's duties as a certifying agency, the statute provides as follows:
Professional certificates remain the property of the board, and the board reserves the right to ... cancel and recall any certificate when ... [t]he holder has been convicted of a felony; or... [o]ther due cause as determined by the board.
Miss.Code Ann. § 45-6-11(7)(d)-(e) (Supp. 1998).
¶ 11. Regulations promulgated by the Board concerning its certification program state as follows:
The board reserves the right to cancel and recall any certificate when. .[t]he holder has been convicted, or entered either a plea of guilty or a plea of nolo contendere to a ... felony.
¶ 12. Section 45-6-11(8) calls for a due process hearing whenever the Board contemplates the exercise of its authority to recall a previously-issued certificate.
¶ 13. Finally, Section 45-6-11(1) requires that a law enforcement officer leaving the field for two years for any reason must meet certain "rehiring standards" in the event that person desires to re-enter law enforcement.

IV.

Lack of Substantial Evidence to Support the Board's Decision
¶ 14. We conclude that the chancellor was manifestly in error when he held that the Board's decision was unsupported by substantial evidence based on considerations relating to the dismissal of the charges accusing Rushing of aiding in the escape of two Jefferson Davis County prisoners. Our review of the transcript satisfies us, beyond any legitimate dispute, that the Board based its decision, not on the aiding an escape charges, but on the matter of Rushing's guilty plea to an embezzlement chargea charge that involved the wrongful appropriation of property belonging to the county and made available to Rushing and his accomplice solely by virtue of the position of trust and responsibility they occupied as deputy sheriffs. The entire transcript of the hearing before the Board consisted of evidence and discussions *1090 involving the embezzlement charge. Yet the chancellor, in his findings and conclusions, does not so much as mention the matter of the embezzlement. This failure by the chancellor to treat the central issue affecting the Board's decision is perplexing. Nevertheless, our obligation remains to conduct an independent review of the record to reach our own conclusion as to whether there was substantial evidence to support the Board's decision.
¶ 15. In actuality, we conclude that the issue before us begins with a question of law and not one of fact. The threshold legal issue is whether the Board was warranted in expanding by regulation the statutory ground for recall of a certificate. The statute requires the certificate holder to have been "convicted of a felony." Miss.Code Ann. § 45-6-11(7)(d) (emphasis supplied). It is quite clear that, insofar as this embezzlement charge is concerned, Rushing has not been convicted. His plea of guilty was accepted for the limited purpose of treating his offense under Section 99-15-26, which specifically contemplates a temporary (and possibly permanent) suspension of the acceptance of the plea.
¶ 16. However, under the Board's regulations quoted above, matters relating to felony charges were expanded to include entry of a guilty plea or a nolo contendere plea. Just as there is no doubt that Rushing has not been convicted of embezzlement, there can be no doubt that, under the statutory scheme, he has formally entered a guilty plea to the crime since the applicable statute only affords its benefits "upon the entry of a plea of guilty by a criminal defendant...." Miss.Code Ann. § 99-15-26(1) (Supp.1998). Any suggestion that the entry of a guilty plea in hopes of ultimate dismissal of the charges under Section 99-15-26 was, in actuality, something less than a full-blown plea of guilty was laid to rest by the Mississippi Supreme Court in Brown v. State, 533 So.2d 1118, 1123 (Miss.1988). In Brown, the defendant had offered a guilty plea, but the trial court had postponed a formal adjudication of guilt under Section 99-15-26. Id. at 1121. Brown violated the court's imposed conditions and the State petitioned the court to adjudicate Brown's guilt under his previous plea and impose sentence. Id. Brown argued that he should be allowed to withdraw his plea and change to a plea of not guilty since his guilty plea had not been formally accepted at the time it was tendered. Id. The trial court refused to permit the plea to be withdrawn. On appeal, the Mississippi Supreme Court upheld the trial court ruling, holding that to treat a plea tendered under these circumstances in the manner Brown urged would effectively destroy the beneficial purposes of the statute. Id.
¶ 17. An administrative agency has certain latitude in the accomplishment of its mission, but the underlying limitation on its authority lies in the statute defining its authority. A regulation or regulatory action that cannot find statutory authority to support the action is void. Clancy's Lawn Care & Landscaping, Inc. v. Mississippi State Bd. of Contractors, 707 So.2d 1080, 1083 (Miss.1997). Thus, the issue is whether the regulation permitting recall of a certificate for someone entering a guilty plea to a felony charge was an unauthorized expansion of the Board's authority to recall upon a conviction for a felony. We conclude that it was not an unauthorized usurpation of authority. We make that determination based on the Board's more general authority to recall a certificate for "[o]ther due cause as determined by the board." Miss.Code Ann. § 45-6-11(7)(e) (Supp.1998).
¶ 18. It seems evident that the underlying rationale for permitting recall of a convicted felon's certificate is that, by suffering a felony conviction, the individual either (a) has demonstrated his actual unfitness to engage in law enforcement, or (b) without regard to the subjective capacity of the individual to reform himself and continue to serve, has created a situation that would reasonably be expected to *1091 erode public trust and confidence in the individual's legitimate authority to enforce the law. It is not the formal judgment of conviction and any ensuing punishment that warrants disqualification of the individual except to the extent that the judgment establishes the unlawful activity. It is, rather, the fact of the illegal behavior itself that raises questions concerning the individual's fitness. In this case, the Board received the entire transcript of Rushing's guilty plea. In it, the State set out in substantial detail those facts it was prepared to prove to implicate Rushing in criminal activity intimately related to his service as a deputy sheriff. When offered the opportunity to dispute any of the State's proffer at the plea hearing, Rushing declined to do so. Thus, the Board was faced with evidence of criminal behavior directly related to Rushing's previous law enforcement activities. It would involve the most technical of arguments to suggest that, merely because the trial court elected to treat Rushing leniently by offering him the possibility of a future dismissal of the criminal charges, the Board was statutorily required to turn a blind eye to the conduct itself. We conclude, rather, that the discretion given to the Board to consider "[o]ther due cause" to recall a certificate could reasonably extend to clear evidence of criminal activity for which the certificate holder has, for some reason, escaped formal conviction.
¶ 19. Thus, we find that the Board did not err in considering Rushing's guilty plea to embezzlement and the underlying facts surrounding the entry of that guilty plea simply because, by subsequent good behavior, Rushing was able to have the formal criminal charge itself dismissed. It is the conduct and not the resulting punishment that speaks to a certificated law enforcement officer's fitness to continue in that role.
¶ 20. Having concluded that the Board was entitled to consider Rushing's guilty plea to embezzlement under Section 45-6-11(7)(e), we are unable to say that the Board substantially abused its discretion when it determined that Rushing's admitted criminal activity in using his position as a deputy sheriff to obtain a countyowned firearm, pawn the weapon, and apparently apply the proceeds for his own personal use, merited the recall of his certificate as a law enforcement officer. In so concluding, we cannot help but observe that Rushing's testimony concerning his complicity in the crime at the Board hearing stood in stark contrast to the testimony under oath at his plea hearing a few years earlier. We note that his explanation to the Board that he pled guilty on the day his trial was set to begin solely because of financial concerns and the desire to avoid further pain to his family was openly greeted with some measure of skepticism by at least one member of the Board. We cannot say that this was an inappropriate response, based on our review of the record.
¶ 21. We further find little merit in the chancellor's conclusion that the Board acted arbitrarily and capriciously in not reinstating the certificate based on the numerous letters of support filed on Rushing's behalf. The duty to assess the fitness of a particular individual to be certified to work in the important field of law enforcement is one that lies with the Board, based on its evaluation of all the evidence bearing on the question and does not lie with the friends and supporters of the candidate, no matter their number, their high station in life, or the sincerity of their conviction of the individual's fitness.
¶ 22. We conclude that there was substantial evidence in the record to support the Board's determination that Rushing had entered a guilty plea to a felony. In light of that, and in light of the fact that the felony admittedly committed by Rushing was intimately related to his service as a deputy sheriff, we simply cannot conclude that the Board abused the discretion afforded it to determine such questions when it found Rushing's prior conduct disqualified him from future employment in *1092 the field of law enforcement. Neither do we think that the Board abused its discretion when it failed to permit the general outpouring of community support for Rushing to persuade the Board to re-certify Rushing despite his prior commission of criminal acts constituting the crime of embezzlement.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.