LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. The Clarksdale Police Department hired Daryl A. Clark on June 26, 2002. Clark served as a police officer without incident until July 2003. On July 19, 2003, at approximately 3:45 a.m., Officer Scott Johnson was escorting a suspect down the hall of the Clarksdale Police Department when he noticed a small plastic bag lying on the floor. The substance in the bag appeared to be powder cocaine. Officer Johnson contacted Corporal Billy Baker who tested the substance. It tested positive for cocaine. Officer Johnson testified that he initially suspected that the person he arrested dropped the cocaine while walking down the hall. However, video surveillance footage revealed that the bag had been on the floor since around 6:00 p.m. Between 6:00 p.m. and 3:45 a.m., several officers walked past the bag apparently not noticing it.
¶ 2. Chief Steve Bingham and Captain Danny Hill of the Clarksdale Police Department reviewed the surveillance video and determined that Clark had dropped the cocaine on the floor. On July 22, 2003, Clark was called to the station and confronted about the cocaine. He was given Miranda warnings and questioned but denied having possessed the bag of cocaine. Captain Leon Williams later testified at a hearing held by the Board on Law Enforcement Officer Standards and Training that during the questioning Clark asked if the cocaine was in a clear plastic bag. Captain Williams testified that prior to this no one had mentioned that the cocaine was found in a clear plastic bag. Clark denied having found or arrested anyone *573 for possession of a controlled substance while on duty that day.
¶ 3. On January 8, 2004, a Civil Service Commission Board meeting was held where it was decided that Clark would be suspended indefinitely without pay. Clark then applied for unemployment compensation. The Mississippi Employment Security Commission (the Commission) reviewed the evidence, but not the surveillance footage, and found that Clark was entitled to unemployment compensation benefits. Next, Clark was indicted for possession of cocaine, tried, and acquitted. Following the criminal trial, the aforementioned hearing was held by the Law Enforcement Officer Standards and Training Board during which the Board viewed surveillance footage from the night of the incident. The Board found by clear and convincing evidence from the surveillance footage and testimony that Clark engaged in conduct unbecoming an officer and cancelled and recalled Clark’s professional certificate pursuant to Mississippi Code Annotated Section 45 — 6—11 (7)(e) (Rev.2004).
¶ 4. Clark appealed the Board’s decision to the Coahoma County Chancery Court. On June 7, 2006, the chancery court reversed the Board’s decision and reinstated Clark as a certified law enforcement officer in good standing with the State of Mississippi. The chancery court found that the surveillance footage was not substantial evidence of criminality. The chancery court went on to state that the Board’s pursuit of the certification hearing after the acquittal by the circuit court and the award of benefits by the Commission was evidence of arbitrary and capricious conduct.
¶5. The Board now appeals to this Court asserting the following issues: (1) the chancery court exceeded its authority in reversing the Board’s cancellation and recall of Clark’s professional certificate by considering evidence outside the record, and (2) the chancery court erred by substituting its own judgment for that of the Board.
¶ 6. Finding that the decision of the Board was based on substantial evidence, we reverse the decision of the chancery court and reinstate the Board’s decision.
STANDARD OF REVIEW
¶7. The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence, was arbitrary or capricious, was beyond the agency’s scope or powers, or violated the constitutional or statutory rights of the aggrieved party. Bd. on Law Enforcement Officer Standards & Training v. Voyles, 732 So.2d 216, 218(¶ 6) (Miss.1999). There is a rebuttable presumption in favor of the agency’s decisions; the burden of proving to the contrary is on the challenging party. Id. Appellate review of an agency’s decision is limited to the record and the agency’s findings. Id. at 218(¶ 7). The reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case. Id. When this Court finds that the lower court has exceeded its authority in overturning an agency decision, we will reverse and reinstate the agency’s decision. Id.
DISCUSSION
I. DID THE CHANCERY COURT ERRONEOUSLY CONSIDER EVIDENCE OUTSIDE THE RECORD?
¶ 8. The Board argues that the chancellor erroneously gave weight to the acquittal in the criminal trial and the awarding of unemployment benefits by the Commission in reaching his decision. Also, the Board argues that the chancellor *574 went beyond the record when he asked the Board to investigate whether Chief Bing-ham recommended the cancellation of Clark’s professional certificate.
¶ 9. In its findings, the chancery court noted “that the same evidence presented to the Board was also considered in two separate forums, under two (2) separate burdens of proof, and neither of those findings were consistent with the Board’s.” Despite this comment, the chancellor went on to state that he considered all the evidence in the record in making his decision. The chancellor also stated that “[b]y continuing to pursue the hearing to cancel Mr. Clark’s certification, after two separate forums with two separate burdens of proof had previously decided that Mr. Clark had never possessed cocaine, one could conclude that the Board’s decision was arbitrary and capricious.” We cannot agree with the chancellor that the Board’s decision to continue with the hearing was arbitrary and capricious. Mississippi Code Annotated Section 45-6-11(7) (Rev.2004) states that “[professional certificates remain the property of the board, and the board reserves the right to ... cancel and recall any certificate” upon certain occurrences. When the Board believes there is a reasonable basis for the cancellation or recalling of a certificate, notice and opportunity for a hearing shall be provided. Miss. Code Ann. § 45-6-11(8) (Rev.2004). We find that the Board was not bound by the Commission’s findings or the findings of the circuit court. Further, according to the testimony of the Clarksdale city attorney, the Commission made its findings without viewing the surveillance video. The Board believed a reasonable basis existed for cancelling or recalling the certificate and therefore properly proceeded with a hearing.
¶ 10. The Board next argues that the chancellor erroneously considered communications between the Board’s attorney and Chief Bingham that took place the day that Clark was found not guilty of possession of a controlled substance by the circuit court. The chancellor found that “these communications — however subtle they may be — unnecessarily influenced the Board in an arbitrary and capricious manner.” We find that these communications were outside the record and were not proper for consideration by the chancery court. Voyles, 782 So.2d at 218(¶ 7). The chancellor stated, “one of these subsequent communications went so far as to inquire deeply into the evidence the Clarksdale Police Department had to support that Mr. Clark possessed cocaine.” However, the communication between the Board’s attorney and the police department was irrelevant in determining whether the Board had substantial evidence to support its decision. We cannot find this statement to be evidence that the Board acted arbitrarily and capriciously. The communications should not have been considered by the chancery court as they were outside the record and outside the parameters of the standard of review.
II. DID THE CHANCERY COURT SUBSTITUTE ITS OWN JUDGMENT FOR THAT OF THE LAW ENFORCEMENT OFFICER STANDARDS AND TRAINING BOARD?
¶ 11. After reviewing the video surveillance, the Board found substantial evidence that Clark dropped the cocaine on the floor. The chancellor reviewed the same surveillance footage and found that “[t]he recording was not substantial evidence of criminality.” The Board argues to this Court that the chancellor substituted his own judgment for that of the Board and should be reversed. After a thorough review of the record, including the surveillance footage, we agree with the Board.
*575 ¶ 12. At the Board hearing, Chief Bingham, Captain Hill, and Captain Williams testified that the surveillance video showed Clark leaving the restroom and apparently tossing something between his left and right hand as he walked down the hall. The three witnesses testified that seconds later, a small plastic bag appeared on the floor. The chancellor found fault with the testimony as to what was depicted in the recording. The chancellor’s opinion stated that although “[t]he record clearly reflects that the bulk of the witnesses offered testimony as to what they saw depicted on the recording ... [n]one of these witnesses were present when the incident occurred, and none of the witnesses could state that Mr. Clark had possessed cocaine from what was shown on the recording.” The chancellor went on to find that “the recording failed to show Mr. Clark dropping anything to the floor.” Although the chancellor is correct that none of the witnesses were present at the time of the incident, their testimony was based upon the surveillance video. Also, it is true that the witnesses could not testify that the bag dropped contained cocaine; however, the contents of the bag that was picked up at the same spot the bag was dropped tested positive for cocaine. This Court has viewed the video surveillance footage and finds it consistent with the Board’s findings. We find that sufficient evidence existed for the Board to draw the conclusion based on the testimony that Clark dropped the bag of cocaine.
¶ 13. Another basis for the chancellor’s reversal of the Board’s decision was the reliability of the surveillance video. The chancellor stated that “most of the testimony offered by the City, with regards to the surveillance equipment’s capabilities, was by a retail salesman and not by one qualified with regards to its operational mechanics.” The chancellor determined that the surveillance equipment was “technologically advanced,” but the “recording was not foolproof and could be manipulated by others.” No one testified that the video was not accurate or may have been tampered with before the hearing. We find the testimony about the operation and accuracy of the surveillance system given by the salesman, who was also the president and security systems contractor of Access Technology Group, the installer of the surveillance system, was sufficient to verify its reliability. As for the chancellor’s finding that the salesman’s testimony was not sufficient, it must be kept in mind that “the formalities of practice, procedure, and evidence are relaxed in all administrative proceedings.” Mississippi Bd. of Veterinary Med. v. Geotes, 770 So.2d 940, 943(¶ 14) (Miss.2000). The surveillance video was relevant as it showed the incident in question, and we find that the video was properly relied upon during the hearing.
¶ 14. We find that the chancery court erred in reversing the Board’s decision as the Board based its findings on substantial evidence. The decision of the chancellor is reversed for reinstatement of the decision of the Board.
¶ 15. THE JUDGMENT OF THE COAHOMA COUNTY CHANCERY COURT IS REVERSED AND RENDERED FOR REINSTATEMENT OF THE DECISION OF THE BOARD ON LAW ENFORCEMENT OFFICER STANDARDS AND TRAINING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.