BARNES, J.,
 

 for the Court:
 

 ¶ 1. After pleading guilty in 1999 to a felony charge of embezzlement, Augustus Johnson, a police officer with the Itta Bena Police Department, was discharged from employment. Pursuant to regulations, his certification as a law-enforcement officer was returned to the Board on Law Enforcement Officer Standards and Training (the Board) for the Mississippi Department of Public Safety. Nine years later, Johnson applied for a position as a patrol officer with the Mississippi Valley State University campus police (MVSU), which requested that the Board reinstate Johnson’s certification.
 
 [1]
 
 The Board denied the request. Johnson appealed the Board’s decision, and after a hearing, the Board recalled Johnson’s certification. Johnson appealed to the Chancery Court of Leflore County which reversed the Board’s decision and remanded for a de novo hearing. Finding that the chancery court erred, we reverse and render judgment, reinstating the Board’s decision.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Johnson received his certification as a law-enforcement officer on October 10, 1990, and was employed with the Itta Bena Police Department. In 1998, facing severe personal financial difficulties, Johnson pawned five guns, two of which were the property of the police department. Johnson was charged with, and pleaded guilty to, felony embezzlement. On December 6, 1999, the Circuit Court of Leflore County ordered Johnson to complete a pretrial diversion program and pay a fine of $250.
 
 [2]
 
 
 *706
 
 On February 26, 1999, Johnson was discharged from employment as an officer, and pursuant to the Board’s policy requirements, the Itta Bena Police Department returned Johnson’s law-enforcement certification to the Board.
 
 [3]
 

 ¶ 3. The embezzlement charge was dismissed on August, 20, 2001, after Johnson had successfully completed his pretrial diversion program. After a request was submitted by Johnson, his criminal record was expunged in March 2008. MVSU then submitted an application to the Board on Johnson’s behalf, requesting that his certification be reinstated. In a letter dated May 1, 2009, the Board informed MVSU and Johnson: “According to our policies[,] we cannot approve his certification request. The reason for this denial is that this officer has a record of embezzlement with Pre-trial Diversion. As I am sure you are aware, [the Board] is responsible for insuring that certified officers maintain standards of good moral character.”
 

 ¶ 4. Upon Johnson’s request, the Board conducted a hearing regarding Johnson’s certification on September 11, 2008. At the hearing, Johnson was allowed to testify and present witnesses to support his case for certification. The Board, after hearing such evidence and reviewing the record, “voted unanimously to cancel and recall [Johnson’s] certificate,” noting that his conduct “violate[d] the minimum standards and diminishe[d] the public trust in [his] competence and reliability to assume and discharge the responsibilities of a law enforcement officer.”
 

 ¶ 5. Johnson appealed the Board’s findings to the Leflore County Chancery Court. The chancellor reversed the Board’s decision, determining that the Board conducted a hearing for initial certification rather than recertification and that the Board failed to submit any specific facts that it had relied upon in making its decision. The chancery court remanded the case for a de novo hearing based upon its findings. The Board has appealed the chancery court’s order; upon our review, we find that the reversal was an abuse of discretion and that the chancellor substituted his judgment for that of the agency. We reverse the chancellor’s judgment and reinstate the Board’s denial and recall of Johnson’s certification.
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court will not disturb the decision of an administrative agency “unless the agency order was unsupported by substantial evidence, was arbitrary or capricious, was beyond the agency’s scope or powers, or violated the constitutional or statutory rights of the aggrieved party.”
 
 Miss. Bd. on Law Enforcement Officer Standards and Training v. Clark,
 
 964 So.2d 570, 573 (¶ 7) (Miss.Ct.App.2007) (citing
 
 Miss. Bd. on Law Enforcement Officer Standards & Training v. Voyles,
 
 732 So.2d 216, 218 (¶ 6) (Miss.1999)). Furthermore, an appellate court “cannot substitute its judgment for that of the agency”[;] rather, the “[a]ppellate review of an agency’s decision is limited to the record and the agency’s findings.”
 
 Id.
 
 “When this Court finds that the lower court has exceeded its authority in overturning an
 
 *707
 
 agency decision, we will reverse and reinstate the agency’s decision.”
 
 Id.
 

 I. Whether the Board afforded Johnson due process in denying his request for certification.
 

 ¶7. The chancery court reversed the Board’s decision and remanded for a hearing to afford Johnson an opportunity to present additional evidence for consideration by the Board. However, the Board contends that Johnson was provided appropriate due process and a chance to present such evidence at the September 11, 2008 hearing.
 

 ¶ 8. “Administrative agencies must afford minimal due process consisting of notice and an opportunity to be heard.”
 
 D.J. Koenig & Assocs., Inc. v. Miss. State Tax Comm’n,
 
 838 So.2d 246, 254 (¶ 24) (Miss.2003) (citing
 
 State Oil & Gas Bd. v. McGowan,
 
 542 So.2d 244, 246 (Miss.1989)). “The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.”
 
 Carl Ronnie Daricek Living Trust v. Hancock County ex rel. Bd. of Supervisors,
 
 34 So.3d 587, 595 (¶ 16) (Miss.2010) (citation omitted). Mississippi Code Annotated section 45-6-11(8) (Rev.2004) also states:
 

 When the board believes there is a reasonable basis for either the reprimand, suspension, cancellation of, or recalling the certification of a law enforcement officer or a part-time law enforcement officer, notiee and opportunity for a hearing shall be provided in accordance with law prior to such reprimand, suspension or revocation.
 

 ¶ 9. In the Board’s May 1, 2008 letter, notifying Johnson of the denial of his request for certification, the Board informed him of the opportunity to request a hearing before the Board, which Johnson promptly submitted. Furthermore, at the start of the September 11, 2008 hearing, the Board asked Johnson the following:
 

 THE CHAIRMAN: Do you understand the potential outcome of this hearing?
 

 JOHNSON: Yes, sir.
 

 THE CHAIRMAN: Do you understand the opportunity to have counsel, bring people to speak, submit documents and other related materials before today?
 

 JOHNSON: Yes, sir.
 

 THE CHAIRMAN: You understand that this hearing must be complete, and that nothing may be added to the record on appeal, and your ... application must affirm your readiness to begin and participate in this hearing today?
 

 JOHNSON: Yes, sir.
 

 Johnson then proceeded to testify regarding his successful completion of the pretrial diversion program and the expungement of his criminal record. Johnson also presented a witness, the former Itta Bena deputy chief of police, who testified that Johnson was an “upstanding citizen” who had made “a bad judgment” and recommended to the Board that Johnson be given a second chance. Based on this information, we find that the Board afforded Johnson sufficient due process prior to the recall of his certification at the September 11, 2008 hearing.
 

 ¶ 10. The Board also contends that it was not required to conduct a hearing in 1999 to recall Johnson’s certification, asserting that no action was needed at that time. The Board on Law Enforcement Officer Standards and Training (BLEOST) Professional Certification Policy and Procedures Manual states in Chapter 2, section 102.05 (Rev.2006):
 

 The staff shall decide the disposition of a certificate within a reasonable time after receiving notice that a certificate has
 
 *708
 
 been returned. The Board may decide to:
 

 1. delay consideration of the return of the certifícate;
 

 2. inactivate the certificate;
 

 3. assign stewardship of the certificate to a new law enforcement employer or;
 

 4. annul/revoke a certificate, if issued in error or through misrepresentation or fraud.
 

 Also, in Chapter 3, section 102.08 (Rev.2001), the manual reads: “Board hearings
 
 may
 
 be convened at the request of the director or upon the receipt of a request from an individual aggrieved of a staff finding, administrative action or to obtain relief under board policies.” (Emphasis added). Nowhere in these policy regulations does it require that the Board conduct a hearing for those actions outlined in section 102.05. Thus, the Board’s decision not to conduct a hearing after Johnson’s certification was returned in 1999 was not a violation of due process.
 

 II. Whether the Board’s actions were consistent with its governing statutes and regulations.
 

 ¶ 11. The Board claims that it has “ample statutory authority ... to determine whether or not to reactivate and/or revoke a certificate[,]” and its decision to recall Johnson’s certificate was supported by such authority. The Board also asserts that Johnson’s certification had been merely inactive, and since Johnson “expressed no interest in returning to law enforcement,” his certification had lapsed pursuant to Board regulations.
 
 See
 
 BLEOST Profl Certification Policy and Procedures Manual, Ch. 2, § 102.09 (“When an officer, certified by Mississippi statute, leaves law enforcement employment for a period of two years or more, his or her certification will lapse.”).
 

 ¶ 12. “[A]n administrative agency’s construction of its own rules and regulations and the statutes under which it operates” is afforded great deference by this Court and reviewed de novo.
 
 Miss. Real Estate Appraiser Licensing and Certification Bd. v. Schroeder,
 
 980 So.2d 275, 288 (¶ 34) (Miss.Ct.App.2007) (citing
 
 Sierra Club v. Miss. Envtl. Quality Permit Bd.,
 
 943 So.2d 673, 678 (¶ 10) (Miss.2006)). It is apparent from the statutes and regulations that the Board has considerable discretion as to its actions regarding a returned certification. As already noted, the Board’s policy manual states that a certification may be inactivated, reassigned to a new officer, revoked, or the Board might simply delay any consideration. Further, Mississippi Code Annotated section 45-6-11(7) (Rev.2004) states:
 

 Professional certificates remain the property of the board, and the board
 
 reserves the right to either reprimand the holder of a certificate, suspend a certificate upon conditions imposed by the board, or cancel and recall any certificate
 
 when:
 

 (a) The certificate was issued by administrative error;
 

 (b) The certificate was obtained through misrepresentation or fraud;
 

 (c) The holder has been convicted of
 
 any crime involving moral turpitude;
 

 (d) The holder has been convicted of a felony;
 

 (e) The holder has committed an act of malfeasance
 
 or has been dismissed from his employing law enforcement agency;
 
 or
 

 (f) Other due cause as determined by the board.
 

 (Emphasis added).
 

 ¶ 13. Johnson’s main argument is that since his hearing was, unbeknownst to
 
 *709
 
 him, for the recall and cancellation of his certification, it warranted a different standard of review by the Board. In his appeal to this Court, Johnson submits: “To the extent recertification was the issue, review of the Board’s decision may properly have considered evidence other than Johnson’s plea on the criminal charge nine (9) years prior to his application, including evidence of rehabilitation.” However, Johnson has not cited to any authority to support this assertion, nor has he shown how the September 11, 2008 hearing would have been conducted differently. Although Johnson claims that the Board only took into account his felony charge, the record reflects that the Board was provided evidence not only of Johnson’s crime, but also mitigating factors surrounding the incident (i.e., his financial difficulties) and evidence of his subsequent rehabilitation.
 

 ¶ 14. We also find Johnson’s claim on appeal — that the chancellor found “that there was nothing in the record which indicated the type of hearing to which Johnson was entitled, whether recertification, recall and cancellation” — erroneous. Johnson should have been aware that a recall of his certification was a possible outcome of the proceedings. In the Board’s letter denying Johnson’s certification request, the Board quoted its policy for the recall or cancellation of certificates. Also, in the letter advising Johnson of his hearing date, the Board clearly stated: “The Board may reject any unqualified applicant for certification by a classification of not eligible and reprimand, suspend or
 
 cancel and, recall your certificate.”
 
 (Emphasis added).
 

 ¶ 15. Accordingly, we find that the Board’s actions were consistent with statutory authority and its policy and procedural regulations.
 

 III. Whether the doctrine of laches is applicable.
 

 ¶ 16. Anticipating that Johnson might argue that the doctrine of laches bars the revocation of his certification nine years after the entry of his guilty plea, the Board makes the proactive argument that it does not bar the Board’s actions. “[T]he doctrine of laches ... prevents one from pursuing a claim after an inordinate and unjustified delay that works to the disadvantage of the responding party.”
 
 Aron v. Reid,
 
 850 So.2d 108, 113 (¶ 20) (Miss.Ct.App.2002) (citing
 
 Allen v. Mayer,
 
 587 So.2d 255, 260 (Miss.1991)). “Laches requires the party seeking to assert the defense show: ‘(1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.’ ”
 
 Nicholas v. Nicholas,
 
 841 So.2d 1208, 1212 (¶ 13) (Miss.Ct.App.2003) (citations omitted).
 

 ¶ 17. As we have already observed, nothing in the Board’s regulations required the Board to conduct a hearing or take immediate action on Johnson’s certification that was returned. We also find that Johnson suffered no prejudice from the Board’s failure to take action until 2008. It was Johnson’s decision not to attempt to re-enter law enforcement for nine years, likely due to his desire to have his record expunged before doing so. In fact, the passage of nine years provided Johnson time to show evidence of rehabilitation. Also, the Mississippi Supreme Court has held that it is a well-settled principle “that a governmental entity is not charged with the laches of its officials[.]”
 
 Morrow v. Vinson,
 
 666 So.2d 802, 805 (Miss.1995) (quoting
 
 Hill v. Thompson,
 
 564 So.2d 1, 14 (Miss.1989)). Therefore, we agree with the Board’s contention that the doctrine of laches would not be applicable in this instance.
 

 
 *710
 
 IY. Whether the chancellor abused his discretion in reversing the Board’s decision and remanding for another hearing.
 

 ¶ 18. The Board contends that the chancery court’s reversal of the Board’s decision to recall Johnson’s certification was an abuse of discretion. In his opinion, the chancellor reasoned that although Johnson’s certificate was never officially revoked after his dismissal in 1999, the certification was subject to a “de facto recall.” The chancellor further stated that “it is the Board’s responsibility to initiate action to examine whether circumstances exist to recall certificates.” The chancery court concluded that, since the hearing was for Johnson’s decertification instead of re-certification, the Board was required to provide “sufficient justification” for its denial.
 

 ¶ 19. We find that the chancery court’s assumption that a “de facto” recall of Johnson’s certification occurred prior to the hearing is not based on any evidence in the record. At the hearing, the chancellor observed:
 

 So you are saying that
 
 although it is not in the record,
 
 but that Mr. Johnson had previously actually applied for either reinstatement or ability to perform as a law enforcement officer after his conviction on a couple of other occasions and was turned down. Or a letter or something was written, apparently, that said, no, you can’t hire him as a law enforcement officer, that, in fact, that would be a de facto certification, whether they call it that or not.
 

 (Emphasis added). Sitting as an appellate court in cases involving findings by an administrative agency, the chancery court may not consider any evidence outside the record. Furthermore, the chancellor admitted that the language used by the Board in its opinion “seemed to indicate that this was the first time [certification] was actually officially canceled,” and counsel for Johnson agreed with this statement. The Board has the discretion under statutory and policy regulations to take a variety of actions regarding a certificate, including delaying consideration, inactivation, or revocation. Nowhere does it state that the failure by the Board to take affirmative action on a returned certificate constitutes a “de facto” recall.
 

 ¶ 20. To support its decision on appeal, the Board cites a similar case,
 
 Board on Law Enforcement Officer Standards and Training v. Rushing,
 
 752 So.2d 1085 (Miss.Ct.App.1999). Bobby Ray Rushing was a deputy sheriff with the Jefferson Davis County Sheriffs Department. Like Johnson, Rushing pawned a gun that was law-enforcement property, and he was indicted for embezzlement in Marion County, Mississippi.
 
 [4]
 
 Rushing entered a guilty plea to the embezzlement charge, and his formal plea was suspended upon his completion of requirements imposed by the court. The cause was dismissed two years later.
 
 Id.
 
 at 1087 (¶¶ 2, 3). After the charge was dismissed, Rushing immediately applied for recertification and informed the Board of the embezzlement charge, as it was unaware of the charge prior to Rushing’s request.
 
 Id.
 
 at (¶ 4). After conducting a hearing where Rushing presented various witnesses to speak on his behalf, the Board “voted to withdraw his certification as an eligible law enforcement officer.”
 
 Id.
 
 at 1088 (¶ 5). On appeal, the chancery court reversed the Board’s decision, concluding that the
 
 *711
 
 Board’s failure to consider the ample testimony by witnesses in support of Rushing was arbitrary and capricious.
 
 Id.
 
 at (¶ 6). However, this Court reversed the chancery court’s judgment in
 
 Rushing,
 
 stating:
 

 The duty to assess the fitness of a particular individual to be certified to work in the important field of law enforcement is one that lies with the Board, based on its evaluation of all the evidence bearing on the question and does not lie with the friends and supporters of the candidate, no matter their number, their high station in life, or the sincerity of their conviction of the individual’s fitness.
 

 Id.
 
 at 1091 (¶ 21). We further reasoned:
 

 [W]e simply cannot conclude that the Board abused the discretion afforded it to determine such questions when it found Rushing’s prior conduct disqualified him from future employment in the field of law enforcement. Neither do we think that the Board abused its discretion when it failed to permit the general outpouring of community support for Rushing to persuade the Board to re-certify Rushing despite his prior commission of criminal acts constituting the crime of embezzlement.
 

 Id.
 
 at 1091-92 (¶ 22). Here, the chancellor distinguished Johnson’s case from
 
 Rushing,
 
 stating:
 

 There is nothing in the record -indicating that the Board took the initial step of determining the type of hearing to which Mr. Johnson was entitled. It appears that the Board handled this matter as a recall and failed to give any explanation as to why. Additionally, as stated previously, the Board had notice of Mr. Johnson’s record of embezzlement as well as his participation in a pretrial diversion program, whereas, the Board in
 
 Rushing
 
 did not know of his guilty plea.
 

 However, this distinction is not relevant to our review and disposition. The timing of when the Board learns of a guilty plea or felony charge has no bearing on the manner in which the Board conducts its hearing. Rather, as this Court observed in
 
 Rushing:
 
 “It is the conduct and not the resulting punishment that speaks to a certificated law enforcement officer’s fitness to continue in that role.”
 
 Rushing,
 
 752 So.2d at 1091 (¶ 19).
 

 ¶ 21. We find that the Board’s recall of Johnson’s certification was not arbitrary or capricious. Mississippi Code Annotated section 45-6-11(4) (Rev.2004) states, in pertinent part, that:
 

 In addition to the requirements of subsections (8), (7) and (8) of this section, the board, by rules and regulations consistent with other provisions of law, shall fix other qualifications for the employment of law enforcement officers, including minimum age, education, physical and mental standards, citizenship,
 
 good moral character,
 
 experience and
 
 such other matters as relate to the competence and reliability of persons to assume and discharge the responsibilities of law enforcement officers,
 
 and the board shall prescribe the means for presenting evidence of fulfillment of these requirements.
 

 (Emphasis added). Contained in the Board’s Policy and Procedures Manual is the “Law Enforcement Code of Ethics,” which requires every law-enforcement officer to recite, in part, the following:
 

 I will
 
 keep my private life unsullied as an example to all;
 
 maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others.
 
 Honest in thought and deed in both my personal and professional life, I will be exemplary in obeying the laws
 
 
 *712
 

 of the land
 
 and the regulations of my department.
 

 (Emphasis added). Johnson clearly failed to uphold this code of ethics. Chapter 3, section 101.04(2) of the manual reads:
 

 Any condition, conduct or action that would breach the established minimum standards, violate the
 
 Law Enforcement Code of Ethics
 
 or would greatly diminish the public trust in the competence and reliability of a law enforcement office would be actionable as due cause for reprimand, suspension (under conditions), recall or cancellation of a certifí-cate.
 

 Accordingly, the Board was well within its authority and discretion to recall Johnson’s certification, and its decision was supported by the evidence.
 

 ¶ 22. Also, as the Board in its brief to this Court observed, two years have elapsed since the Board’s denial of certification, and Johnson may now re-apply. Mississippi Code Annotated section 45-6-11(10) (Rev.2004) reads: “Any full-or part-time law enforcement officer whose certification has been cancelled pursuant to this chapter may reapply for certification, but not sooner than two (2) years after the date on which the order of the board can-celling such certification becomes final.”
 

 ¶ 23. We find that the chancery court exceeded its authority in its reversal and remand of the Board’s decision. Accordingly, we reverse the judgment of the chancery court, and we render a judgment to reinstate the Board’s decision.
 

 ¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LEFLORE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Johnson was already employed by MVSU as a dispatcher.
 

 [2]
 

 .
 
 See
 
 Miss.Code Ann. § 99-15-26(1) (Supp.2010).
 

 [3]
 

 . Chapter 2, section 102.04 (Rev.2006) of The Board on Law Enforcement Officer Standards and Training (BLEOST) Professional Certification Policy and Procedures Manual states, in pertinent part, that a law-enforcement employer "should return the certificate to the Board director ... [if] the employee no longer meets all of the qualifications for employment (i.e., the employee has been convicted, pled guilty, pled nolo contendere, fined, ordered into probation or
 
 pre-trial diversion in relation to a felony or a crime involving moral turpitude,
 
 etc.”) (Emphasis added).
 

 [4]
 

 . He was also indicted in Jefferson Davis County for assisting prisoners to escape, but it was not pertinent to the issue on appeal.